**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **DEREKA HARVEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.: 20-cv-02860-SAG** |
| | * | |
| **JAI MEDICAL CENTER,** | * | |
| | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Dereka Harvey ("Plaintiff") brings this action against her former employer, Jai Medical Center ("Jai Medical"), alleging discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act ("ADA").  ECF 1.  Jai Medical has filed a motion for summary judgment, ECF 20, which Plaintiff opposed, ECF 27.  Jai Medical then filed a reply.  ECF 30.  This Court has reviewed the filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons explained below, Jai Medical's motion will be granted and judgment will be entered in favor of Defendant.

### I.   FACTUAL BACKGROUND

Jai Medical provides medical care to underserved individuals in Baltimore City, regardless of their ability to pay.  ECF 20-1 at 3.  Plaintiff began working as one of three Customer Service Representatives at Jai Medical on April 1, 2019.  ECF 27-2, Ex. 1.  Her full-time position involved answering telephones and assisting clients in scheduling appointments.  ECF 27-2, Ex. 2 at 13.  She used a telephone, computer, and headset to do her job.  ECF 20-5 at 19:8-14.  At the time of her hire, Plaintiff elected to enroll in short-term disability coverage with MetLife.  ECF 27-2. Ex. 4 at 18:3-19:18).

Unfortunately, on July 2, 2019, Plaintiff suffered a vicious physical attack from an intruder in her home. ECF 20-5 at 22:14-19. Her injuries included a gunshot wound and several stab wounds, to include a severed finger. ECF 27-2, Exs.7-8. She missed work from July 3 until July 15, 2019, and was hospitalized for some of that period. ECF 27-2, Ex. 9. Jai Medical advanced her general leave, which she had not yet accrued, to allow her to be paid during her extended absence. ECF 20-7. Upon her return, she presented a doctor's note, which stated that she could return to work, with "reduction in activities that involve movement of fingers on right hand such as typing or grasping/lifting with right hand." ECF 27-2, Ex. 9. Plaintiff did not request any particular hand-related accommodations.

At work, Plaintiff at least twice told her supervisor, Rochelle Briscoe, that the computer was giving her headaches because it bothered her eyes. ECF 27-2, Ex. 6 at 102-03. Briscoe told her that she could not move from the computer because her job required her to "clock in and clock out of the phone." *Id.* Briscoe also told her she could not lay her head down on her desk while waiting for calls and suggested instead that she "take a Tylenol." *Id.*

Following her return to work, Plaintiff continued to make frequent requests for time off and for unscheduled leave. On August 26, 2019, Plaintiff contacted Landy Castillo, of Human Resources, to request leave under the Family Medical Leave Act ("FMLA"). ECF 27-2, Ex. 11. Two days later, Ms. Castillo informed Plaintiff that she was ineligible for FMLA leave because she had not worked for the company for a sufficient amount or duration of time. *Id.* Plaintiff also asked about short-term disability ("STD"), and Ms. Castillo opined that she did not qualify for that either. *Id.* On August 29, 2019, Ms. Castillo sent Plaintiff an email stating:

> Also, I was able to confirm with our Met Life representative that you are not eligible to receive STD benefits at this time. Unfortunately, you will not be able to substitute STD benefit[s] as a supplement to taking additional time off.

2

*Id.* The next day, Plaintiff provided a note from her treating physician, documenting and supporting her request for a leave of absence from September 1, 2019 through April 30, 2020. ECF 20-13 at 2. Her request was denied, and Plaintiff continued to work, although she continued to have absences. ECF 20-17. In fact, on September 18, 2019, Jai Medical issued an "Employee Warning Notice" detailing Plaintiff's attendance problems, noting that her leave allotment had been exceeded, and stating "it is expected that she will not have any additional scheduled or unscheduled time off unless its [*sic*] a serious emergency." ECF 27-2, Ex. 10.

However, on September 20, 2019, Plaintiff went to a therapy appointment during her lunch break. ECF 27-2, Ex. 6 at 56-57. At the therapist's office, Plaintiff passed out and was taken to the hospital. *Id.* Plaintiff called her supervisor to inform her that she had passed out. *Id.* Plaintiff also notified Human Resources, by voicemail, when she was released from the hospital the next day. *Id.*

Two days later, on September 23, 2019, an attorney, Saraah Lang, Esq., emailed Castillo to make a "reasonable accommodation request" for Plaintiff. ECF 20-15. Specifically, Lang requested:

(1) A flexible work schedule so Plaintiff can attend her appointments;
(2) Granting additional unpaid leave; and
(3) Potential to work remotely.

*Id.* Lang also asked that Castillo send her information relating to Plaintiff's application for STD. *Id.*

In response, Counsel for Jai Medical sent Lang a copy of the Jai Medical STD policy, along with a copy of Plaintiff's applications. ECF 20-16. Jai Medical also detailed the amount of paid and unpaid leave that had been extended to Plaintiff and said:

The recent events have given Jai Medical a good faith concern about [Plaintiff's] current ability to perform the essential duties of her position, with or without a

reasonable accommodation. Attached hereto is a copy of the job description for her position. Jai is requesting that [Plaintiff] provide this document to her health care provider and have him/her advise everyone whether she is currently able to perform the essential duties of her position, with or without a reasonable accommodation. If she is not currently able to perform those duties, then it requests that the doctor advise as to when she will be able to return to performing those essential duties, with or without a reasonable accommodation. Jai requests this information be provided on or before October 16, 2019.

ECF 20-16. On October 1, 2019, Lang responded and said, "Thank you. I will be following up with [Plaintiff] this week about obtaining the requested information." ECF 20-16. However, Jai Medical received no further communications from Lang. Plaintiff attests that she tried to contact Castillo in November and December, 2019 but was unable to reach anyone. ECF 27-2, Ex. 6 at 68, 70-71.

Instead, on October 2, 2019, Plaintiff submitted a claim to MetLife for short term disability benefits. ECF 27-2, Ex. 13. MetLife approved her for $300.00 STD payments from September 26, 2019 through December 1, 2019, which were paid. *Id.* Jai knew, because of communications it received from MetLife, that Plaintiff was receiving STD benefits.

Having had no further communication with Plaintiff or her attorney, Castillo met with Jai Seunarine, the CEO of Jai Medical, to discuss whether Plaintiff's employment should be continued. ECF 27-2, Ex. 4 at 86-87. On November 27, 2019, Castillo signed an "employee termination form," which reflects Plaintiff's last day worked as September 20, 2019 and the "termed" date as November 1, 2019. ECF 27-2, Ex. 14. On December 2, 2019, Castillo communicated to Plaintiff's supervisors, including Briscoe, that Plaintiff "is considered voluntarily resigning from her position as a customer service representative" as of November 1, 2019. ECF 20-18. On January 15, 2020, Plaintiff applied for unemployment. ECF 20-19. She told the unemployment representative that she had not received official notification that she had been discharged and that she still had not been released back to work by her doctor. *Id.*

4

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 Fed. App'x 459, 461 (4th Cir. 2010)

(unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.   ANALYSIS

Plaintiff's Complaint consists of three ADA counts: discrimination by wrongful discharge (Count One), failure to accommodate (Count Two), and retaliation (Count Three).  Each claim is addressed below.

"When a plaintiff alleges that her employer unlawfully discriminated or retaliated against her in violation of the ADA, she can prove her claim through direct and indirect evidence ... [or] otherwise ... may proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)."  *Laird v. Fairfax Cty., Virginia*, 978 F.3d 887, 892 (4th Cir. 2020).  ADA wrongful discharge claims lacking direct evidence are similarly evaluated via the *McDonnell Douglas* framework, *Messick v. Bd. of Educ. of Wicomico Cty.*, 2014 WL 7357554, at *5 (D. Md. Dec. 19, 2014).  Plaintiff has not provided any direct or indirect evidence of discriminatory animus supporting her discrimination claims.[1]  *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (defining direct evidence as evidence that "reflect[s] directly the alleged discriminatory attitude" and "bear[s] directly on the contested employment decision." (quoting *Taylor v. Va. Union Univ.*, 193 F.3 219, 232 (4th Cir. 1999) (en banc))).  Thus, the Court

---

[1] The closest she comes is Plaintiff's allegation that Briscoe told her to "take a Tylenol and get back to work" when she was having headaches causing her some problems viewing her computer screen.  However, the record contains no evidence that Briscoe had any involvement in the termination decision.  *See* ECF 27-2, Ex. 2 (Briscoe Dep.) at 24-25 (noting "I wouldn't even make that decision" and "I believe that comes from like the executive office").  Briscoe's alleged animus, then, does not constitute direct evidence suggesting termination on the basis of disability.

must engage in the *McDonnell Douglas* analysis for each.  The Fourth Circuit has described the

mechanics of *McDonnell Douglas* as follows:

> Under the *McDonnell Douglas* proof scheme, the plaintiff has the initial burden of
> proving a prima facie case of discrimination by a preponderance of the evidence.
> If the plaintiff succeeds in proving the prima facie case, the burden shifts to the
> defendant to articulate some legitimate, nondiscriminatory explanation which, if
> believed by the trier of fact, would support a finding that unlawful discrimination
> was not the cause of the employment action.  If the defendant meets this burden of
> production, the presumption created by the prima facie case "drops out of the
> picture," and the plaintiff bears the ultimate burden of proving that she has been the
> victim of intentional discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502
> (1993) (holding that prima facie case plus disbelief of employer's asserted
> justification for employment action is not necessarily sufficient to establish
> violation; summary judgment appropriate unless plaintiff presents adequate
> evidence that employer unlawfully discriminated).

*Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), as amended (June

9, 1995), as amended (Mar. 14, 2008).

### A.  Disability Discrimination (Count One)

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove

'(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question,

and (3) that [her employer] discharged her (or took other adverse employment action) because of

her disability.'"  *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015)

(quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).  Plaintiff's

discrimination claim fails on the second and third prongs of this analysis.

Viewing the facts in the light most favorable to Plaintiff, she has not established that she

was a "qualified individual" meeting her employer's legitimate expectations at the time of her

termination.  She was not working and was not in communication with Jai Medical.  Her physician

had expressed the opinion that she could not presently fulfill the requirements of the job, leading

her employer to the impression that she would not return to work.  As this court described in a similar case,

> At most, Thomas has shown that the City failed to send him a written pre-termination notification that his performance was unsatisfactory, and that this failure may have deviated from the City's standard procedures in addressing performance issues.  But Thomas cites to no record evidence that his performance was satisfactory in the period immediately preceding his termination.  And Chief Pristoop testified that he believed that Thomas was unwilling to return to work, because Thomas refused to remain in contact with the Department.  Thomas may disagree with Chief Pristoop's determination that his failure to return calls while on unpaid leave evinced an intent not to return to work, but it is the Chief's assessment, not Thomas's, that matters.

*Thomas v. City of Annapolis, Maryland*, 851 Fed. App'x 341, 346 (D. Md. Mar. 12, 2021) (internal citations omitted).  Plaintiff, then, has not adduced evidence to create a genuine issue of material fact as to whether she was meeting Jai Medical's legitimate expectations at the time of her termination.

Additionally, while termination is certainly an adverse action, Plaintiff fails to establish that she was terminated because of her disability.  To demonstrate discrimination under the ADA, Plaintiff must meet the "but-for" standard of causation.  *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016).  Put simply, nothing in the record even begins to suggest that Castillo or Seunarine, the individuals who ultimately made the decision to terminate Plaintiff's employment, possessed discriminatory animus linked to Plaintiff's medical condition.  The record reflects no interaction between Plaintiff and Seunarine.  Plaintiff has not shown that Castillo made any disparaging remarks about Plaintiff's disability.  Castillo engaged with Plaintiff on multiple occasions regarding her accommodation requests, but while those requests referenced Plaintiff's assertion of a disability, the emails and deposition testimony regarding those conversations gives no indication that Plaintiff's underlying medical condition itself was ever at issue.  Put differently, Castillo's interactions with Plaintiff centered on the viability of her accommodation requests, not

the claimed disability underlying them.  Plaintiff's claims are therefore better suited to consideration in the accommodation or retaliation contexts.

Further, Plaintiff adduces no evidence that would permit an inference of but-for causation, such as disparate treatment afforded to a non-disabled employee with a similar attendance record. Given the distinct lack of linkage between the decisionmakers and Plaintiff's alleged disability, as well as the lack of any similarly situated comparators, but-for causation between Plaintiff's disability and her termination cannot be established for the purposes of fulfilling her burden on summary judgment.  Thus, summary judgment will be granted for Jai Medical on Plaintiff's ADA discrimination claim.

### B.  Failure to Accommodate (Count Two)

Plaintiff's next claim alleges that Jai Medical denied her reasonable accommodation for her disability.  "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,' 29 C.F.R. § 1630.2(o)(1)(ii); or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by ... other similarly situated employees without disabilities,' *id*. § 1630.2(o)(1)(iii)."  *Hamel v. Bd. of Educ. of Harford Cty.*, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018).  To meet the elements of her disability discrimination claim, then, Plaintiff must establish that with or without reasonable accommodation, she could perform the essential functions of her position.  *See Jacobs*, 780 F.3d at 579-80; 42 U.S.C. § 12111(8) (defining "qualified individual").  The plaintiff bears the "burden of identifying an accommodation that would allow a qualified individual to perform the job," as well as "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."  *Lamb v. Qualex, Inc.*, 33 Fed. App'x 49, 59 (4th Cir. 2002).  "Once the plaintiff has met his burden of proving that reasonable

9

accommodations exist, the employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer." *Id.* Notably, "[a]n employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation." *Crawford v. Union Carbide Corp.*, 1999 WL 1142346, *4 (4th Cir. Dec. 14, 1999) (internal quotations omitted), cert. denied, 530 U.S. 1234 (2000); *see also Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. App'x 314, 323 (4th Cir. 2011) (same). In the end, to establish a prima facie case for failure to accommodate, a plaintiff must demonstrate (1) that the employee was an individual with a disability within the meaning of the ADA; (2) that the employer had notice of the disability; (3) that with reasonable accommodation, the employee could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *see also Stephenson v. Pfizer*, 641 Fed. App'x 214, 219 (4th Cir. 2016) (per curiam); *Jacobs*, 780 F.3d at 579; *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

Although it was not mentioned in her complaint, Plaintiff alleges in her opposition that she was never accommodated "with the restrictions maintained within her July 15, 2019 doctors note." ECF 27 at 16. That note suggested "reduction in activities that involve movement in fingers on right hand such as typing or grasping/lifting with right hand." *Id.* The evidence, however, does not suggest either that Plaintiff identified such an accommodation or that the failure of that accommodation led to her inability to perform her position. There are absolutely no cited instances of Plaintiff having difficulty at work with her right hand.[2] Indeed, the only evidence Plaintiff

---

[2] Plaintiff's Complaint only mentions one requested accommodation: "a light or part-time schedule." ECF 1 p 12. In fact, none of her requested accommodations, until her final request on September 23, 2019, mentioned anything about her work schedule. That letter, which was written by Lang, asked for "a flexible work schedule so [Plaintiff] can attend her appointments." ECF 20-15. As noted above, Jai Medical asked for additional information to consider that accommodation request, but Plaintiff and her counsel never

submits relate to her headaches and mental health concerns.  *See, e.g.*, ECF 27-2, Ex. 6 at 98 (Plaintiff's testimony, "My hand isn't the issue, it's my brain.").

Ultimately, Plaintiff has not established that she ever requested any reasonable accommodation that would have allowed her to perform the essential functions of her position or that her employer refused such accommodation.  Summary judgment is therefore warranted on that claim as well.

### C.  Retaliation (Count Three)

Plaintiff's third and final claim alleges that Jai Medical retaliated against her for requesting accommodations for her disability.  As summarized by the Fourth Circuit, the ADA retaliation standard is as follows:

> Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added).  In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action.  *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001).  In reviewing retaliation claims, courts recognize the need to balance the desire to encourage employees to oppose unlawful discrimination, with "an employer's interest in maintaining a harmonious, productive and loyal workforce."  *Fitch v. Solipsys Corp.*, 94 F.Supp.2d 670, 678 (D. Md. 2000).

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).

Submitting a request for accommodation is a protected activity under the ADA.  *See Jacobs*, 780 F.3d at 577.  Viewing the facts in the light most favorable to Plaintiff, she satisfied the first prong of the retaliation analysis by requesting accommodation.  Additionally, she clearly

---

provided a response.  Thus, as to the sole reasonable accommodation mentioned in her Complaint, Plaintiff cannot meet the fourth element of a claim, that "the employer refused to make such accommodations."

suffered an adverse action – her termination.  Thus, to satisfy the final prong of the retaliation analysis, she must show a genuine issue of material fact as to a causal link between her accommodation requests and her termination.[3]

To establish a causal connection between the termination and her accommodation requests, Plaintiff must prove "but-for" causation.  *Gentry*, 816 F.3d at 235 ("The only remaining question is whether the ADA's text calls for a 'but-for' causation standard.  We hold that it does."). Temporal proximity alone is generally insufficient to prove causation, *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 963 (4th Cir. 2005), as is merely showing that the adverse action occurred subsequent to Plaintiff's accommodation requests, *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998).  As an initial matter, the relevant events in this case are not particularly proximate in time.  The first accommodation request Plaintiff cites is the letter from her physician in July, 2019, regarding her finger-related limitations.  That request occurred almost five months before Plaintiff's eventual termination, and as noted above, there is no evidence that Plaintiff's finger condition adversely affected her ability to perform work in the intervening months.  Thus, the July request has not been shown to be a but-for cause of her termination.  Similarly, Plaintiff's request on August 26, 2021 for FMLA leave occurred roughly three months before her termination.  Even Plaintiff's final request for accommodation, made by her attorney in September, 2021, occurred two months prior to her termination.

Second, based on the record, Plaintiff has not otherwise established the existence of a factual question as to whether her accommodation requests were a but-for cause of her termination. As noted above, there is no particularly close temporal proximity in this case.  Moreover, the record

---

[3] Not all of the accommodation requests Plaintiff mentions in her opposition were referenced in her Complaint.  For the reasons described below, however, this Court need not distinguish between those that were or were not referenced, because Plaintiff fails to show a causal link between any of her requests and her termination.

is clear that Plaintiff, through her attorney or otherwise, never responded to Jai Medical's attempt to engage in an interactive process regarding her September, 2021 request for accommodation.

In her opposition, Plaintiff appears to suggest that her termination occurred after, and was therefore retaliation for, her election of short-term disability benefits. ECF 27 at 14. Her Complaint contains no mention of short-term disability benefits, however, and she cannot now use her motions briefing to amend her complaint or state a new theory of liability. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) (explaining that Plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint").

Even had Plaintiff established the existence of a genuine dispute of material fact as to a prima facie case of ADA retaliation, the final *McDonnell Douglas* step would be to determine whether Jai Medical's proffered legal justification for terminating Plaintiff is mere pretext. Jai Medical claims that it terminated Plaintiff in late November, 2019 because she had stopped reporting to work and had failed, personally or through counsel, to communicate with her employer after October 1, 2019. Plaintiff correctly notes that Jai Medical similarly did not seek to communicate further with her, despite being aware that she was receiving short-term disability benefits. Plaintiff also alleges that she made some attempts to contact Jai Medical by phone and left voicemails. However, the record with respect to the employment-related communication chain is clear. Jai Medical had asked Plaintiff, through counsel, to respond on or before October 16, 2021, with information to facilitate its evaluation of her accommodation request, specifically records from her medical provider. Counsel informed Jai Medical that she would consult Plaintiff and provide the requested information. Nevertheless, Plaintiff and her attorney never provided the information Jai Medical needed, and Plaintiff remained out of work without further explanation.

Jai Medical took no action for six weeks past the due date, before deciding to terminate Plaintiff's employment because it had no information from her physician about her condition, she had not returned to work and appeared to have abandoned her position, and she had exhausted her leave.

Plaintiff suggests, in her opposition, that Jai Medical's reasoning "has morphed over time." ECF 27 at 10. However, the various iterations Plaintiff cites essentially all say the same thing, in slightly different words. *Id.* at 10-11 (citing ECF 27-2, Exs. 15-17). The sole exception cited by Plaintiff is from the deposition testimony of Ms. Castillo, which did not ask the reason for Plaintiff's termination, but asked her employment status as of October 1, 2019. *Id.* (citing ECF 27-2, Ex. 4 at 69:11-15). Thus, even crediting Plaintiff's statements that she tried unsuccessfully to reach Human Resources by phone in November, there is no evidentiary basis to permit a factfinder to conclude that Jai Medical's proffered non-retaliatory reasons for Plaintiff's termination were pretextual.

## IV.   CONCLUSION

For the reasons set forth above, Jai Medical's Motion for Summary Judgment, ECF 20, will be GRANTED and judgment will be entered in favor of defendant. A separate order follows.


Dated: October 5, 2021                              _____/s/_____
                                                    Stephanie A. Gallagher
                                                    United States District Judge